**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DEBORAH S. ELROD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. CIV-10-415-CH |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Ms. Deborah S. Elrod brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. Based on the Court's review of the record and issues presented, the Court reverses the Commissioner's decision and remands this case for an immediate award of benefits.

### **Procedural Background**

This case has an unusually long procedural history. Ms. Elrod initially filed an application for disability benefits in January 2002, alleging a disability onset date of July 7, 2000. The agency denied her application for disability benefits initially and upon reconsideration. Ms. Elrod then requested and was granted an administrative hearing after which an administrative law judge (ALJ) issued an unfavorable decision. The Appeals Council denied Ms. Elrod's request for review. Ms. Elrod then appealed to this Court. *See*

*Elrod v. Barnhart*, Case No. CIV-05-100-T (W.D. Okla.). The case was remanded pursuant to the Commissioner's unopposed Motion to Remand for further proceedings, brought pursuant to sentence four of 42 U.S.C. § 405(g). The same ALJ held another administrative hearing and again denied Ms. Elrod's claim for disability benefits. On administrative appeal, the Appeals Council vacated the ALJ's second decision and remanded the case to a different ALJ for a third hearing held on May 27, 2009. On November 3, 2009, the ALJ issued an unfavorable decision. The Appeals Council denied Ms. Elrod's request for review, and this action for judicial review followed.

## The Administrative Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520. The ALJ first determined that Ms. Elrod had not engaged in substantial gainful activity from her alleged disability onset date, July 7, 2000, through her last date insured, March 30, 2005. At step two, the ALJ determined that Ms. Elrod has severe impairments consisting of degenerative disc disease; neck, left shoulder, left arm and low back pain; atypical chest pain; asthma; hypertension; migraines; remote history of seizures; facial neuralgia; and adjustment disorder with depressive mood. At step three, the ALJ determined that Ms. Elrod's impairments do not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ next considered Ms. Elrod's residual functional capacity (RFC) and determined that she retains the capacity to perform a limited range of sedentary work, diminished by significant nonexertional limitations:

> [T]he undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except the claimant can sit in intervals of forty-five minutes for the total of about six hours throughout an eight-hour workday; stand and/or walk in intervals of forty-five minutes for the total of about six hours throughout an eight-hour workday; stand and/or walk in intervals of thirty to forty-five minutes for the total of about four hours throughout an eight-hour workday; can lift and/or carry twenty pounds occasionally and five pounds frequently; can occasionally bend, stoop, crouch, and climb stairs; but, cannot crawl or twist. The claimant can frequently reach with the right arm; occasionally reach with the left arm at chest level and below; and, frequently finger. The claimant cannot interact extensively with the general public. The claimant is able to sustain concentration necessary to perform unskilled work. She must have a moderately clean working environment.

Administrative Record (AR) 438. Based on this RFC and the testimony of a vocational expert, the ALJ determined at step four of the sequential evaluation that Ms. Elrod cannot perform her past relevant work as deli cutter, informal waitress, housekeeping cleaner or mechanical inspector. At step five of the sequential evaluation, the ALJ concluded that through her last date insured, Ms. Elrod could have performed such unskilled jobs as office helper, weight tester and table worker.

## **Issues Presented for Judicial Review**

Ms. Elrod contends that the ALJ failed to properly evaluate the medical evidence, relied on incompetent vocational testimony and erred in evaluating her credibility.

3

## Standard of Review

Because the Appeals Council ultimately denied review of the most recent ALJ's decision, the Commissioner's final decision for purposes of this appeal is the ALJ's November 3, 2009, decision. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d at 760 (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**Analysis**

On July 1, 2000, Ms. Elrod injured her left shoulder while she was working as a waitress. Because of the resulting pain and inability to work, she was referred for a number of diagnostic tests under her employer's workers' compensation insurance. None of the diagnostic tests revealed significant positive findings. Cervical X-rays performed shortly after the injury showed normal height and alignment of the disc spaces and vertebrae. X-rays taken four months later revealed only slightly decreased C6-7 disc space. On February 19, 2001, Dr. Kevin L. Wood reported "essentially normal" results from an EMG test of Ms. Elrod's left shoulder, neck and upper arm. Despite the lack of positive test results, Ms. Elrod continued to report significant pain.

Ms. Elrod was referred to Dr. Glenn Schoenhals, a board-certified neurologist, for treatment and evaluation in relation to her workers' compensation case. Almost one year after her injury, results of an MRI of the cervical spine dated March 6, 2001, showed only mild degenerative changes at C6-7. On May 22, 2001, Dr. Schoenhals reported to the Workers' Compensation Court that Ms. Elrod had reached "a point of improvement that cannot be facilitated further medically." AR 100. Dr. Schoenhals expressed the difficulty of explaining why neither therapy, time nor medication was helping alleviate Ms. Elrod's pain. He stated his opinion, however, that "pain amplification[1] plays a major role in [her]

---

[1] Pain amplification results in high sensitivity to painful and non-painful stimuli. While the exact cause is unknown, research suggests possible abnormalities in sensory processing by the central nervous system as well as peripheral tissue abnormalities. *See* Staud, Roland, *Biology and Therapy of Fibromyalgia: Pain in Fibromyalgia Syndrome* (2006), http://www.ncbi.nih.gov/pmc/articles/PMC1526632.

symptoms" and noted that this condition would not respond to surgery or other interventional treatments. He expressed his near certainty that Ms. Elrod would continue to seek medical treatment for neck and shoulder pain.[2]

Dr. Schoenhals' prediction proved to be accurate. Ms. Elrod has continued to seek and receive treatment for neck and shoulder pain, as well as frequent headache pain and lower back pain. Medical records from Dr. James T. Cail, one of Ms. Elrod's treating physicians, show regular appointments during the time period before Ms. Elrod's date last insured and detail her numerous complaints of pain. On March 11, 2004, Dr. Cail completed a Medical Source Statement in which he listed Ms. Elrod's physical limitations. Dr. Cail specified that Ms. Elrod could neither frequently nor occasionally lift and/or carry more than 7-8 pounds; that she could stand or walk no more than 2 hours in an 8-hour workday; that she could sit no more than a total of 30 minutes in an 8-hour workday; that she could never climb, balance, stoop, kneel, crouch, crawl, reach, handle, finger or feel; and that she would necessarily be required to lie down during the normal workday to manage pain or other symptoms. Dr. Cail's medical source statement represented his opinion of Ms. Elrod's limitations from February 2002 through the date of the medical source statement. AR 356-357.

On May 16, 2007, Dr. Johnaga Saidi examined Ms. Elrod at the request of the Social Security Agency. In his Medical Source Statement of Ability to Do Work-Related Activities,

---

[2] Dr. Schoenhals did not state that Ms. Elrod was malingering or exaggerating the severity of her pain.

Dr. Saidi expressed his opinion that Ms. Elrod could occasionally lift up to 20 pounds, but that she could never carry even the lowest category of weight, up to ten pounds. Dr. Saidi stated that Ms. Elrod could sit or stand for 15-20 minutes at one time without interruption and that she could walk for 10-15 minutes at a time without interruption. He stated that she could sit for a total of 5 hours in an 8-hour workday, stand for a total of 3 hours in an 8-hour workday, and walk for a total of 1 hour in an 8-hour workday. Dr. Saidi noted that the range of motion of the lower spine was mildly decreased associated with mild pain and stiffness and that although range of motion of hips was within normal limits, there was also some associated stiffness in the hips. AR 718-723.

Dr. Richard H. Swink performed a consultative mental status examination on June 6, 2007, during which he administered three standardized tests. The results of the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) indicated a profile involving the "neurotic triad," a profile which, according to Dr. Swink, "is associated with persons who have psychoneurotic problems, may convert stress to physical symptoms, and often have a bonafide physiological basis to their problems." AR 726-727. Her test scores were consistent with her statements of "no history of dependence on alcohol or illegal substances." *Id.* In conclusion, Dr. Swink stated:

> Mrs. Elrod evidenced intact mental status functions, Low Average to Average intellectual ability, and Average reading skills on testing. She evidences a chronic pain disorder based on medical conditions being treated, with development of secondary anxiety and depressed mood.

7

AR 727. His DSM-IV diagnosis was (1) Adjustment Disorder with Mixed Anxiety and Depressed Mood, Moderate, Secondary to Physical Conditions and (2) Pain Disorder Associated with Both Psychological Factors and a General Medical Condition. *Id.*

### A. The ALJ's Evaluation of the Medical Evidence

As the record indicates, previous remands of this case have been at least partially based on the need for re-evaluation of the medical source statement of Dr. Cail, a treating physician. Ms. Elrod contends that in the decision now under review, the ALJ erred in his analysis of Dr. Cail's treating source opinion.

The standards for evaluating a treating physician's opinion are clear:

> When evaluating the opinion of a treating physician, the ALJ must follow a sequential analysis. In the first step of this analysis, he should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record. If the answer to both these questions is "yes," he must give the opinion controlling weight. But even if he determines that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight.

*Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citations omitted). When a treating physician's opinion is not given controlling weight, it is still entitled to deference and must be weighed using relevant factors such as the length, frequency, nature, and extent of the treating relationship; the extent to which the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole; the doctor's specialization; and other factors tending to support or contradict the opinion. *See* 20 C.F.R. § § 404.1527(d). Ultimately, the ALJ's

8

decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (quotation omitted).

In this case, the ALJ followed the two-step process in analyzing Dr. Cail's opinion.[3] The ALJ declined to give Dr. Cail's opinion controlling weight because "objective diagnostic testing including x-rays and MRI studies were all within normal limits." *Id.* The ALJ then concluded that this treating source opinion should be given only "minimal weight because Dr. Cail's findings are not supported by his own treating notes or the objective record overall." *Id.*

The ALJ's description of most of the test results in this case is substantially accurate. But the normal test results are nevertheless consistent with Dr. Schoenhals' diagnosis of "pain amplification" which he stated played a "major role in [Ms. Elrod's] symptoms."[4] AR

---

[3]The ALJ criticized Dr. Cail's opinion because the bulk of the form "consists only of checked boxes[.]" AR 442. The Court notes that the form completed by Dr. Cail is quite similar to Form No. 0960-0662 provided by the Social Security Administration and completed by Dr. Saidi. *See* AR 718-723.

[4]The facts and circumstances in this case resemble those in *Sisco v. U.S. Department of Health and Human Services*, 10 F.3d 739 (10th Cir. 1993) in which the Tenth Circuit Court of Appeals was faced with an ALJ's misconception that to receive disability benefits, a claimant must present conclusive proof of disability through laboratory diagnostic techniques:

> The most glaring misconception is the ALJ's belief that the language in § 223(d)(5)(A) of the Social Security Act (SSA) requiring proof of a disability by "medically acceptable clinical or laboratory diagnostic techniques" means that a disability is covered by the Act only if it can be conclusively diagnosed by a

(continued...)

9

100. The results of Dr. Swink's consultative examination and his conclusion that Ms. Elrod "evidences significant secondary depression and anxiety, in response to problems in functioning on a physical basis" (AR 727) are also consistent with Dr. Schoenhals's diagnosis of an amplified pain condition.

Moreover, the ALJ's finding regarding the alleged lack of support for Dr. Cail's opinion is not supported by substantial evidence. Dr. Cail's treating notes, as well as the treating notes from other physicians and from hospital emergency room visits, are consistent with and do support Dr. Cail's medical source statement. Ms. Elrod's medical records chronicle her repeated reports of pain and her attempts to get relief from her pain.

### B. The Vocational Evidence

Despite abundant medical evidence supporting Ms. Elrod's complaints of pain, the ALJ rejected the opinions of Ms. Elrod's treating physician and the consultative physician and instead gave "considerable weight" to the testimony of Dr. Thomas N. Lynn, a nonexamining, nontreating physician who testified as a medical expert. Dr. Lynn reviewed the medical evidence and formulated an RFC which the ALJ adopted. The ALJ incorporated this RFC into the hypothetical question posed to the VE. Ms. Elrod challenges the accuracy

---

[4](...continued)
"laboratory-type" test. While going through the motions of applying the five-step test and evaluating Plaintiff's testimony [regarding chronic fatigue syndrome], the ALJ returned time and time again to his erroneous belief that Plaintiff had not presented the type of medical evidence necessary to receive benefits.

*Id.* at 743. Like the chronic fatigue syndrome suffered by the claimant in *Sisco*, Ms. Elrod's pain amplification syndrome cannot readily be diagnosed by objective medical tests.

of the VE's testimony as it relates to the ALJ's step-five findings that there are jobs which Ms. Elrod could perform despite her limitations.

The ALJ's hypothetical question to the VE included limitation to sedentary work that required no more than occasional reaching at the chest level and below. Based on the hypothetical question posed by the ALJ, the VE identified three unskilled jobs which she testified Ms. Elrod could do despite her limitations: office helper, weight tester and table worker. The ALJ relied on all three of these jobs to support his step-five determination that Ms. Elrod is not disabled.

The ALJ's step-five finding is flawed. First, the ALJ erred in relying on "office helper" to support his finding that Ms. Elrod could perform other jobs available in significant numbers in the national economy. The VE described "office helper" as "light work," a description consistent with information provided in the Dictionary of Occupational Titles (DOT). *See* Office Helper, DOT § 239.567-010, 1991 WL 672232. The ALJ's own RFC formulation, however, limits Ms. Elrod to a limited range of sedentary work. Moreover, the DOT descriptions of all three jobs identified by the VE and relied upon by the ALJ require frequent to constant reaching. *See id*.; Weight Tester, DOT § 539.485.010, 1991 WL 674890; Table Worker, DOT § 783.687, 1991 WL 680943. But the ALJ's RFC formulation restricts Ms. Elrod to occasional reaching with the left arm to the level of the waist or below. The VE's testimony does not support the ALJ's step-five finding, and the Commissioner did not meet his burden of proving that there are other jobs Ms. Elrod could do despite her limitations.

The Commissioner argues that the jobs identified by the VE support his finding that Ms. Elrod is not under a disability. First, the Commissioner cites the DOT for the proposition that job descriptions must sometimes be supplemented with information about the requirements of jobs as performed in a particular region:

> Occupational information contained in the revised fourth edition DOT reflects jobs as they have been found to occur, but they may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities. DOT users demanding specific job requirements should supplement this data with local information detailing jobs within their community.

Special Notice, 1991 WL 645963. In this case, however, there is nothing in the record to support a conclusion that either the VE or the ALJ conducted such an inquiry.

The Commissioner also contends that because Ms. Elrod can frequently reach with her right hand, she could perform the jobs identified by the VE despite her inability to reach more than occasionally no higher than waist level with her left hand. In support of this contention, the Commissioner cites various judicial decisions finding no conflict between VE testimony and the DOT in cases involving the capabilities of one-armed claimants to perform various jobs. Adopting the Commissioner's argument in this regard would require this Court to engage in speculation. Courts cannot, however, "create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). The Commissioner did not meet his burden of proving at the fifth step of the sequential analysis the existence of jobs which Ms. Elrod could perform.

## C. The ALJ's Credibility Analysis

In her third point of error, Ms. Elrod challenges the ALJ's credibility findings:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

AR 440.

The Tenth Circuit Court of Appeals recently restated the salient points a court must consider when reviewing credibility determinations:

> "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston [v. Bowen]*, 838 F.2d 1125, 1133 [(10th Cir. 1988)] (footnote omitted); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical); *Williams [ex rel.] Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir.1988) ("failure to make credibility findings regarding . . . critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support [her] conclusion that claimant is not under a disability").

*Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (*quoting Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

The Tenth Circuit also restated the process an ALJ should use in evaluating a claimant's subjective allegations of pain:

> The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). We must consider (1)

13

whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Id.* at 1144-1145 (internal quotations and citations omitted). In determining whether a claimant's subjective complaints are credible, the ALJ should consider such evidence as:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1145 (internal quotation and citations omitted).

The ALJ's credibility assessment is based solely on his conclusion that "it does not seem reasonable to conclude from the minimal findings in evidence that such could be the basis for the degree of pain alleged." AR 440. The ALJ's analysis is focused on only one of the factors relevant to credibility. After finding that Ms. Elrod's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," he then rejects Ms. Elrod's credibility based solely on the "the minimal findings in evidence," AR 440, without discussing the other factors upon which a reasoned credibility assessment should be based. The ALJ did not, for example, consider Ms. Elrod's testimony regarding the medication she takes and the side effects of those medications. Further, he did not consider Dr. Schoenhals' diagnosis of pain amplification and the implications of that diagnosis. The ALJ's credibility assessment is not based on substantial evidence.

### D.     <u>Immediate Award of Benefits</u>

Ms. Elrod asks this Court to enter an order of remand for an immediate award of benefits pursuant to 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

In deciding whether to remand a case for a rehearing or for an immediate award of benefits, a court should consider both "the length of time the matter has been pending and whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.'" *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (alteration in original) (citation omitted) (*quoting Harris v. Secretary of Health & Human Services*, 821 F.2d 541, 545 (10th Cir. 1987)). In this case, an immediate award of benefits is appropriate. The Commissioner's decision that Ms. Elrod is capable of performing the light and sedentary jobs identified, despite her RFC for a limited range of sedentary work, is not supported by substantial evidence. It has been over ten years since Ms. Elrod first applied for disability insurance benefits. There is nothing to be gained from prolonging the proceedings any further. According to the ALJ's own RFC analysis, Ms. Elrod is physically limited to sedentary work. Because sedentary work is the lowest classification under the statute, there is no need for further proceedings in this matter other than a remand for an award of benefits. *See Sisco v. U.S. Department of Health and Human Services*, 10 F.3d 739 at 745-746.

The decision of the Commissioner is reversed and the cause is remanded for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED this __31st__ day of May, 2011.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE